**STATE of Iowa, Appellee,**

v.

**Donald Wayne WHITE, Appellant.**

No. 96–428.

Supreme Court of Iowa.

May 21, 1997.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, John P. Sarcone, County Attorney, and James Ward, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

TERNUS, Justice.

This case presents the narrow issue whether filling out a blank check on another's account is "alter[ing] the writing of another without the other's permission" as those words are used in Iowa Code section 715A.2(1)(a) (1995). We conclude the completion of a blank check is not the alteration of another's writing. Because the defendant was convicted of uttering an altered check under evidence showing the blank check had been filled out by someone other than the account owner, the defendant's conviction must be reversed.

I. *Background Facts and Proceedings.*

The facts are largely undisputed. On August 14, 1995, defendant, Donald Wayne White, presented a check to an Easy Money Cash Center in Des Moines. The check, dated August 13, 1995, was made payable to Donald Wayne White in the amount of $150.00. It was drawn on the account of Custom Farm Service at United Bank & Trust, Huxley, Iowa, and was signed "Custom Farm Service."

Robert McGuire, the manager of the check cashing business, had White endorse the check; McGuire then took the check to verify it. McGuire could not reach the bank. (Firstar Bank had purchased United Bank & Trust in 1991 and Custom Farm Service's account had been closed sometime in 1992.)

When McGuire could not contact the bank or verify the existence of Custom Farm Service from the telephone directory or the Secretary of State, he called the police.

When the authorities arrived, White told them he obtained the check from a woman for whom he had done yard work. He could not remember the woman's name or address, nor could he take the police to the location where he had done the work.

The county attorney charged White with forgery in violation of Iowa Code section 715A.2:

1. A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that the person is facilitating a fraud or injury to be perpetrated by anyone, the person does any of the following:

   *a.* Alters a writing of another without the other's permission.

   *b.* Makes, completes, executes, authenticates, issues, or transfers a writing so that it purports to be the act of another who did not authorize that act, or so that it purports to have been executed at a time or place or in a numbered sequence other than was in fact the case, or so that it purports to be a copy of an original when no such original existed.

   *c.* Utters a writing which the person knows to be forged in a manner specified in paragraph "*a*" or "*b*."

The case was tried to a jury. At trial, the State narrowed its theory of prosecution to the first alternative under subsection (c) of section 715A.2(1), asserting White knowingly uttered a check forged in the manner specified in subsection (a), in other words, uttered an altered check. The district court instructed the jury in accordance with the State's election.

In White's motion for judgment of acquittal, he argued the State had not proven anyone had "alter[ed] a writing of another without the other's permission." *See* Iowa Code § 715A.2(1)(a). The State argued merely filling out the check without the owner's consent constituted altering. The trial court overruled White's motion and the jury returned a guilty verdict. White was sen-

tenced to an indeterminate prison term not to exceed five years.

■ White appeals, claiming error in the trial court's ruling on his motion for judgment of acquittal. The issue before us is whether the act of filling out a blank check on another's account falls within section 715A.2(1)(a)'s prohibition on "alter[ing] a writing of another." We do not consider whether the facts proven would support a forgery conviction under another alternative of section 715A.2(1). Where, as here, the State elects to proceed under only part of the statute, then what the State charges *is* the statute for purposes of this case. *State v. Wales,* 325 N.W.2d 87, 89 (Iowa 1982).

## II. *Standard of Review.*

■ Although this appeal is from the trial court's decision on the sufficiency of the evidence, our interpretation of the statute under which White was convicted is determinative. In interpreting statutes, we strive to discern and give effect to the legislature's intent. *State v. Johnson,* 528 N.W.2d 638, 640 (Iowa 1995). The words used in the statute evidence that intent. *State v. Kidd,* 562 N.W.2d 764, 765 (Iowa 1997). In the absence of a legislative definition of a term or a particular meaning in the law, we give words their ordinary meaning. *State v. White,* 545 N.W.2d 552, 555 (Iowa 1996). The dictionary provides a ready source for ascertaining the common and ordinary meaning of a word. *Kidd,* 562 N.W.2d at 765.

## III. *Altering the Writing of Another Without the Other's Permission.*

■■ This court has not had an opportunity to consider what constitutes "alter[ing] the writing of another." *Black's Law Dictionary* defines "alter" in the following manner:

> To make a change in; to modify; to vary in some degree; to change some of the elements or ingredients or details without substituting an entirely new thing or destroying the identity of the thing affected. To change partially. To change in one or more respects, but without destruction of existence or identity of the thing changed; to increase or diminish.

*Black's Law Dictionary* 77 (6th ed. 1990). *Webster's* definition is similar: "to cause to become different in some particular characteristic ... without changing into something else." *Webster's Third New International Dictionary* 63 (1993). The common thread in these definitions is the notion that alteration envisions changes to something already in existence. Thus, in the context of forgery, an alteration occurs when an existing document is changed or modified. *See People v. Versaggi,* 83 N.Y.2d 123, 608 N.Y.S.2d 155, 629 N.E.2d 1034, 1038 (1994) ("As commonly understood, alter means to change or modify.").

■ The legislature's intent that the word "alter" in section 715A.2(1)(a) have this ordinary meaning is shown by the statute's reference to altering *"the writing of another."* Clearly, the legislature envisioned that a writing *of another* already exists, which is then changed or altered by the defendant. The mere fact a check has preprinted information on it does not make it "the writing of another." If it were otherwise, the fabrication of a document on stationary containing someone else's letterhead would be the alteration of a writing. This interpretation of the statute is not consistent with the common meaning of the words used in section 715A.2(1)(a).

We note the Supreme Judicial Court of Maine reached the same conclusion in considering the difference between making or altering under Maine's forgery law:

> Forgery as a crime, and by our statutory definition, includes the acts of falsely making and falsely altering with intent to defraud. The acts of making and altering are not the same. The act of forging, to forge, separate from its legal significance, is "to make or imitate falsely; to produce or devise, to fabricate"; "to fashion, make, produce"; "to make in the likeness of something else," "to counterfeit." *The act of altering, to alter, is the changing of something already made, produced, or fabricated.*

*State v. Talbot,* 160 Me. 103, 198 A.2d 163, 165–66 (1964) (emphasis added) (citations omitted); *see State v. Brown,* 235 Conn. 502, 668 A.2d 1288, 1296 (1995) (holding filling out

of blank checks was a "false completion" under statute prohibiting the making, completion or altering of a written instrument). We agree with the Maine court's conclusion that the act of altering presupposes the existence "of something already made, produced, or fabricated."

General principles governing alteration of written instruments also support the interpretation we have placed on section 715A.2(1)(a). In discussing what constitutes an "alteration," one authority makes a helpful distinction between filling in a blank to complete an instrument and filling in a blank to alter an instrument. *See* 4 Am.Jur.2d *Alteration of Instruments* § 37, at 25 (1995). The distinction rests on whether the original maker of the instrument intended the blank to be filled in. If filling in the blank is necessary to complete the instrument, filling in that blank is not an alteration. *Id.* If, however, the document was issued as complete, the filling in of any blank space will constitute an alteration. *Id.* Under this analysis, an alteration occurs only when there is already a completed writing in existence.

The same assumption—that a writing already exists—underlies section 715A.2(1)(a). That assumption is apparent from the statute's reference to altering "the writing of another." Consequently, until there is a writing made, completed or issued by another, there can be no alteration of it.

Turning to the facts here, the evidence introduced at trial does not support a factual finding that the check passed by White was "the writing of another" at the time it was filled out. It was merely a blank form. Thus, there is not substantial evidence that the check was "altered." Consequently, White's conviction for uttering an altered check cannot stand. The district court erred in overruling White's motion for judgment of acquittal.

**REVERSED.**