**STATE of Iowa, Appellee,**

v.

**Douglas Allen WESTEEN, Appellant.**

No. 97–2019.

Supreme Court of Iowa.

March 24, 1999.

Linda Del Gallo, State Appellate Defender, Patricia Reynolds, Assistant State Appellate Defender, and Lori Loftsgard, Student Intern, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Thomas S. Mullin, County Attorney, and James J. Katcher, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, NEUMAN, and TERNUS, JJ.

TERNUS, Justice.

This case presents our first opportunity to interpret Iowa's "crack-house" statute, Iowa Code section 124.402(1)(e) (1997). The primary issue presented is whether this statute requires a showing of some degree of continuity in order to establish that the defendant was "keeping" a dwelling for the purpose of possessing or selling controlled substances.

We think it does and conclude that trial counsel rendered ineffective assistance in failing to raise this issue in the district court. Therefore, we reverse and remand.

## I. *Background Facts and Proceedings.*

The defendant, Douglas Westeen, was arrested at the Bennett Motel in Sioux City, Iowa and charged with possession of methamphetamine with intent to deliver in violation of Iowa Code section 124.401(1)(c), and with keeping a dwelling for possessing controlled substances in violation of section 124.402(1)(e). Three other individuals were also arrested with Westeen—Greg Leesley, Charlene Elliott, and Mike Fritsen. Leesley and Elliott testified at Westeen's trial, as did several Sioux City police officers. Neither Westeen nor Fritsen testified.

The testimony of Leesley and Elliott was fairly consistent. They stated that in the early morning hours of June 30, 1997, they were riding in a car with Fritsen, looking for Fritsen's ex-wife. Fritsen asked Leesley, who was driving, to pull in at the Bennett Motel. When they parked, they noticed the door to room 25 was open. Westeen emerged from the room and began talking to Fritsen, whom he apparently knew. There was some conversation between Westeen and Fritsen about drugs, and then Westeen invited them into the room.

Westeen offered to "turn them on" even though the three visitors informed him that they had no money to pay for drugs. Westeen removed a scale from a dresser drawer from which he took a package that he handed to Fritsen. Fritsen gave the package, which contained methamphetamine, to Leesley and asked him to prepare it. As Leesley was preparing the contents of the package, Westeen said, "if [you] like it . . . [you know ] how to get ahold of Mike [Fritsen] . . . and Mike [knows] how to get ahold of [me]."

At this point, the police knocked on the door; they were investigating an anonymous report of suspicious activity. Westeen answered the door and initially refused to let the police in, stating it was not his room. After learning Westeen's identity, the authorities determined there was an outstanding warrant for his arrest. The police then arrested him and conducted a cursory search of the room. During this search, the officers observed dirty cellophane-type wrappers consistent with drug use, a scale, a paper bindle containing suspected methamphetamine, a pencil case holding syringes and a rock that appeared to be methamphetamine, pieces of tin foil consistent with drug use, and the lines of methamphetamine that Leesley had been preparing, along with the razor blade he was using. Subsequent laboratory testing confirmed the drugs found by the authorities were methamphetamine weighing 2.97 grams.

After Westeen's arrest, he consented to a search of his person. The police retrieved a key from his pocket that opened the motel room door. Westeen explained that he had given the person who rented the room, a man by the name of Don, a ride to a casino and had returned to the room by himself. The police found no money on Westeen or in the room.

The record shows that the room had been rented by Robert Raby from June 22 through June 29, 1997, a period that included the early morning hours of June 30. Raby testified that although he had rented the room, he only stayed there one or two nights and then allowed another man, Andrew Cooper, to use the room. Raby left the key in the room, but did not leave any personal belongings there. He did not know who was staying in the room on the night in question. He did acknowledge that he had a conversation with Westeen around the date in question about using the room, but Raby did not give Westeen the key, nor was he aware that Westeen actually used the room.

After lengthy deliberations and several questions to the court, the jury announced that it could not reach a verdict on count I, the charge of possession of methamphetamine with the intent to deliver. The jury did, however, find Westeen guilty of count II, the offense of keeping a dwelling for possessing controlled substances. The court declared a mistrial as to the possession charge and sentenced Westeen to a term of incarceration not to exceed two years on the keeping-a-dwelling charge. Westeen appeals his con-

viction, claiming (1) there was insufficient evidence to support his conviction and (2) trial counsel was ineffective in failing to argue that the element of "keeping" required a showing of some degree of continuity.

## II. *Elements of Offense.*

In order to better understand the defendant's arguments, we start with a review of the statute Westeen was convicted of violating. Iowa Code section 124.402(1)(e) provides that it is unlawful for any person to

[k]nowingly ... keep or permit the keeping or to maintain any premises, store, shop, warehouse, dwelling, temporary, or permanent building, vehicle, boat, aircraft, or other temporary or permanent structure or place, which is resorted to by persons using controlled substances in violation of this chapter for the purpose of using these substances, or which is used for keeping, possessing or selling them in violation of this chapter.

This statute was adopted in 1971 upon the recommendation of the legislature's Drug Abuse Study Committee. *See* 1971 Iowa Acts ch. 148, § 402; Final Report of the Drug Abuse Study Committee to the Sixty–Fourth General Assembly 39–40 (1971); *Cassady v. Wheeler*, 224 N.W.2d 649, 651–52 (Iowa 1974). Section 124.402(1)(e) closely mirrors section 402(a)(5) of the Uniform Controlled Substances Act of 1970. *See* Uniform Controlled Substances Act of 1970 § 402(a)(5), 9 U.L.A. 493 (1979).

In the case before us, we are concerned only with the alternative charged in the trial information and submitted to the jury. The information charged that Westeen "did knowingly keep a dwelling which was used for keeping, possessing or selling controlled substances." Thus, at trial the jury was instructed that the State was required to prove (1) that Westeen "knowingly kept a dwelling" (2) that "was used for keeping, possessing or selling controlled substances." Our subsequent discussion will focus on these elements of the crime.

## III. *Sufficiency of the Evidence.*

■ A. *Scope of review.* We will uphold the trial court's ruling on a motion for judgment of acquittal "if there is substantial evidence in the record to support the defendant's conviction." *State v. McPhillips*, 580 N.W.2d 748, 752 (Iowa 1998). In evaluating whether substantial evidence exists, we view the evidence in a light most favorable to the State. *See State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996). Our review is not all-encompassing; it is limited to assigned error. *See McPhillips*, 580 N.W.2d at 753. Thus, our analysis begins with an identification of the specific deficiencies in the evidence claimed by Westeen at trial and on appeal.

B. *Error preservation.* In his motion for directed verdict, Westeen's counsel challenged the sufficiency of the evidence to support the keeping-a-dwelling charge on two bases: (1) there was insufficient evidence of the first element of the offense because there was no proof that Westeen had control over or was in possession of the premises; and (2) there was insufficient evidence of the second element of the crime because there was no proof that Westeen possessed methamphetamine for the purpose of using or delivering the drug in the motel room. Westeen's challenge to the sufficiency of the evidence on the first element has changed, however, on appeal.

■ On appeal, Westeen argues that the evidence was insufficient to establish the first element of the crime because there was no showing of continuity or that a substantial purpose for keeping the room was for the possession or sale of drugs. This issue was not raised in the trial court, and therefore was not preserved for review. *See Crone*, 545 N.W.2d at 270 (holding only grounds mentioned in motion for judgment of acquittal are preserved for appellate review). Anticipating an error-preservation problem, Westeen also argues that his trial counsel was ineffective for failing to raise this issue in the district court proceedings. Therefore, we will consider Westeen's challenge to the sufficiency of the evidence on the first element in the context of Westeen's ineffective-assistance-of-counsel claim.

As for the second element of this crime, Westeen continues to challenge the sufficiency of the evidence on this element on the

same grounds urged in the trial court. Because error was preserved on this issue, we now examine whether the evidence was sufficient to prove that the premises were "used for keeping, possessing or selling" controlled substances. Iowa Code § 124.402(1)(e).

■ C. *Sufficiency of the evidence on the element of "used for keeping, possessing, or selling" controlled substances.* Westeen argues the evidence was insufficient on this element because only a 2.97–gram chunk of methamphetamine was found in the room and there was no evidence directly linking Westeen with this particular quantity of drug. As the State accurately points out, however, there was evidence that Westeen obtained a small amount of methamphetamine from a location in the room and offered it to the three visitors for consumption in the motel room. In addition, Westeen was the only one present in the room when the other individuals arrived; he had a key to the room; and he invited the others in. From this evidence a jury could reasonably conclude that Westeen was using the room for possessing controlled substances. The fact that the quantity of drugs possessed by Westeen in the motel room was relatively small does not detract from a conclusion that he used the room to possess a controlled substance. Therefore, we reject Westeen's sufficiency-of-the-evidence claim as to the second element of the offense.

### IV. *Ineffective Assistance of Counsel.*

Westeen complains that his trial attorney should have challenged the sufficiency of the evidence to prove that he "kept" a dwelling that is used for keeping, possessing or selling controlled substances. *See* Iowa Code § 124.402(1)(e). Similarly, he claims that his attorney rendered ineffective assistance in failing to object to the marshaling instruction on this offense because it omitted any requirement that there be some degree of continuity before a defendant could be found guilty of "keeping" a dwelling for the possession of a controlled substance. And finally, he asserts that his trial counsel should have objected to the court's response to one of the jury's questions in which the court gave a definition of "keep" that did not include the element of continuity.

A. *Scope of review and governing principles.* Westeen's claim of ineffective assistance of counsel arises from his Sixth Amendment right to counsel. *See State v. Brooks,* 555 N.W.2d 446, 448 (Iowa 1996); U.S. Const. amend. VI. We review this constitutional claim de novo. *See Brooks,* 555 N.W.2d at 448.

■ Westeen must prove two elements to succeed on this claim: (1) counsel failed to perform an essential duty; and (2) this failure resulted in prejudice. See *State v. Ceaser,* 585 N.W.2d 192, 195 (Iowa 1998). Such claims are usually preserved for postconviction relief actions; but where the record is adequate, we will consider them on direct appeal. *See id.* We think the record here is sufficient to determine that Westeen's counsel rendered ineffective assistance. See *State v. Hrbek,* 336 N.W.2d 431, 436 (Iowa 1983) (addressing ineffective-assistance-of-counsel claim on direct appeal where counsel's alleged omission could not be attributed "to mere improvident trial strategy, miscalculated tactics or mistaken judgment"). Therefore, we proceed to the merits of this claim.

■ To prove that counsel failed to perform an essential duty, Westeen must show that counsel's performance "fell outside the normal range of competency." *Ceaser,* 585 N.W.2d at 195 (quoting *State v. Henderson,* 537 N.W.2d 763, 765 (Iowa 1995)). Counsel is not ineffective when the issue counsel failed to raise has no merit. *See id.* Thus, our first step is to consider whether there is any merit to the issue Westeen claims his counsel should have raised. If there is merit to this issue, we must then decide whether counsel's action fell outside the normal range of competency expected of criminal defense attorneys. If we conclude that counsel failed to perform an essential duty, we will then proceed to determine whether Westeen was prejudiced by such a failure.

■ B. *Does the "keeping" element of this crime require some degree of continuity?* Westeen argues that the term "keep" as used in section 124.402(1)(e) requires some

degree of continuity. The State responds that the word encompasses any possession of the premises. In evaluating the correctness of these divergent positions, we must strive to ascertain the legislature's intent. *See State v. White,* 563 N.W.2d 615, 617 (Iowa 1997) ("In interpreting statutes, we strive to discern and give effect to the legislature's intent."). The legislature has not defined the word "keep," so absent an appropriate meaning in law, we give this term its plain and ordinary meaning. *See State v. Ahitow,* 544 N.W.2d 270, 272 (Iowa 1996). The dictionary provides a ready source for the common meaning of a word, so we start there. *See id.*

There are numerous dictionary definitions of the word "keep." *See Webster's Third New International Dictionary* 1235–36 (unabr. ed.1993). The general definition most appropriate for the context in which this term is used in the statute is "PRESERVE, MAINTAIN." *See id.* This general definition has several subdefinitions; at least one supports Westeen's position and at least one supports the State's position. *See id.* (defining "keep" as "to maintain *habitually* by undertaking the expense of . . . to *continue* to maintain" and "to *have* the care of : be responsible for : TEND" (emphasis added)). We conclude that the word "keep" as used in section 124.402(1)(e) is reasonably susceptible of more than one meaning.

■ Because persons might reasonably disagree on the meaning of the term "keep" as used in the statute, the word is ambiguous. *See Ahitow,* 544 N.W.2d at 272. When a statute is ambiguous, the court may resort to rules of statutory interpretation to determine the intent of the legislature. *See id.* Some specific matters that may be considered include (1) the object sought to be attained by the legislature, and (2) the circumstances under which the statute was enacted. *See* Iowa Code § 4.6.

As we noted earlier, section 124.402(1)(e) was taken almost verbatim from the Uniform Controlled Substances Act of 1970. *Compare* Iowa Code § 124.402(1)(e), *with* Uniform Controlled Substances Act of 1970 § 402(a)(5), 9 U.L.A. 493 (1979). The purpose of the uniform act was to obtain unifor-

mity between the laws of the states and those of the federal government concerning controlled substances. *See* 9 U.L.A. 188. The drafters hoped that "a coordinated and codified system of drug control" would result from the adoption of the uniform act by the individual states. *Id.* In adopting the uniform act with some modification, *see Cassady,* 224 N.W.2d at 652, the General Assembly expressed its intent that the Iowa Uniform Controlled Substances Act be "construed so as to effectuate its general purpose to make uniform the law of those states which enact it." Iowa Code § 124.601.

Although we have never had the occasion to interpret this statute, courts from several other jurisdictions that have adopted identical or substantially similar language have had such an opportunity. *See generally* Marjorie A. Caner, Annotation, *Validity, Construction, and Application of State or Local Law Prohibiting Maintenance of Vehicle for Purpose of Keeping or Selling Controlled Substances,* 31 A.L.R.5th 760 (1995); Annotation, *Validity and Construction of State Statutes Criminalizing the Act of Permitting Real Property to be Used in Connection with Illegal Drug Activities,* 24 A.L.R.5th 428 (1994). Although the interpretation placed on this statute by other states is not binding on us, a review of decisions from other jurisdictions is instructive in light of the legislature's goal of achieving uniformity with states adopting the uniform act. *See Cassady,* 224 N.W.2d at 652 (noting that "[j]udicial interpretations in other jurisdictions of [the uniform act] are entitled to great weight, although neither conclusive nor compulsory"). *See generally State v. Atley,* 564 N.W.2d 817, 833 (Iowa 1997) (adopting interpretation of Iowa's uniform act consistent with that of other jurisdictions, citing Iowa Code section 124.601).

In *Dawson v. State,* 894 P.2d 672 (Alaska Ct.App.1995), the Alaska court considered "the precise nature of the conduct prohibited by Alaska's crack-house statute." 894 P.2d at 674. The court first observed that federal courts interpreting a similar federal statute agree that "a dwelling or other building need not be used for the exclusive, or even the primary purpose of storing or distributing

drugs; as long as such use is a substantial purpose, the federal prohibition applies." *Id.* at 675. The court further noted that the federal cases have found the statute "'to embrace some degree of continuity.'" *Id.* at 676 (quoting *United States v. Clavis,* 956 F.2d 1079, 1094 (11th Cir.1992)).

The Alaska court also reviewed state court decisions interpreting state crack-house statutes. The court concluded that "courts have uniformly adopted the position that the prosecution is required to prove, and the jury to find, 'something more than a single, isolated instance of the proscribed activity.'" *Id.* (quoting *Barnes v. State,* 255 Ga. 396, 339 S.E.2d 229, 234 (1986)). On the other hand, these same courts have recognized that "'there is no inflexible rule that evidence found only on a single occasion cannot be sufficient to show a crime of a continuing nature.'" *Id.* (quoting *Barnes,* 339 S.E.2d at 234).

■ Our research confirms the conclusions of the Alaska Court of Appeals. Moreover, we agree with and adopt the Alaska court's summary of the prevailing law with respect to the keeping or maintaining element of crack-house statutes:

> The state need not prove that the property was used for the exclusive purpose of keeping or distributing controlled substances, but such use must be a substantial purpose of the users of the property, and the use must be continuous to some degree; incidental use of the property for keeping or distributing drugs or a single, isolated occurrence of drug-related activity will not suffice. The purpose [for] which a person uses property and whether such use is continuous are issues of fact to be decided on the totality of the evidence of each case; the state is not required to prove more than a single specific incident involving the keeping or distribution of drugs if other evidence of continuity exists.

*Id.* at 678–79; *accord Barnes,* 339 S.E.2d at 234; *Meeks v. State,* 872 P.2d 936, 939 (Okla. Crim.App.1994).

We are persuaded to adopt the interpretation given to this statute in other jurisdictions for several reasons. First, giving the statute an interpretation consistent with that of other jurisdictions furthers the legislature's objective that Iowa's law be consistent with that of states adopting the uniform act. This interpretation is also consistent with the rule of statutory construction that penal statutes must be narrowly construed. *See Ahitow,* 544 N.W.2d at 273. And finally, a narrow interpretation of the statute ensures that the crack-house statute is not merely a restatement of the laws prohibiting possession of controlled substances. *See Howard v. State,* 815 P.2d 679, 682 (Okla.Crim.App. 1991) (noting states have sought to create a distinction between the offense of possession and a violation of the crack-house statute "so as not to offend the principles of double jeopardy").

In analyzing this issue, we have not ignored the cases cited by the State involving similar statutes. We simply find them not on point or not inconsistent with our interpretation of section 124.402(1)(e). *See Jacobs v. City of Chariton,* 245 Iowa 1378, 65 N.W.2d 561 (1954) (involving revocation of sales tax permit upon finding that permittee "intentionally ... kept a gambling device"); *State v. Gardner,* 174 Iowa 748, 156 N.W. 747 (1916) (involving charge of resorting to house of ill fame), *overruled in part on other grounds by State v. Frey,* 206 Iowa 981, 988, 221 N.W. 445, 448 (1928); *State v. Reyelts,* 74 Iowa 499, 38 N.W. 377 (1888) (involving nuisance conviction for "keeping intoxicating liquors"), *overruled in part on other grounds by State v. Dale,* 110 Iowa 215, 219, 81 N.W. 453, 454 (1900); *State v. Cooster,* 10 Iowa 453 (1860) (involving charge of "keeping a gambling house").

We think the *Jacobs, Reyelts,* and *Cooster* cases stand primarily for the proposition that it was not necessary for the state to show more than one instance of the prohibited conduct in order to prove its case. *See Jacobs,* 245 Iowa at 1383–86, 65 N.W.2d at 563–65; *Reyelts,* 74 Iowa at 501, 38 N.W. at 378; *Cooster,* 10 Iowa at 455–57. Moreover, the court's discussion of the "keeping-a-gambling-house" statute at issue in *Cooster* actually supports our decision here. In *Cooster,* we noted that the statute did not prohibit the habitual *use* of the premises as a gambling house, but rather *"the setting apart and*

*keeping a place* for the purpose of a resort [to gambling], which is consummated as well by a single as by a dozen acts." 10 Iowa at 457 (emphasis added). On this point, these cases are in accord with the law we have just reviewed with respect to modern crack-house statutes.

The other case upon which the state relies, *State v. Gardner*, is simply not on point. In *Gardner*, the defendant was charged with resorting to a house of ill fame for the purpose of prostitution. 174 Iowa at 760, 156 N.W. at 752. In the course of interpreting the phrase, "for the purpose of prostitution," the court held that proof of one visit for such a purpose was sufficient to sustain a conviction. *Id.* at 768, 156 N.W. at 754–55. The court did not consider the meaning of the word "keeping."

In summary, we agree with Westeen's contention that an isolated instance of drug usage in a dwelling is not a violation of section 124.402(1)(e). Rather, proof that a substantial purpose of the dwelling was for the ongoing storing, possessing or selling of drugs is required. Therefore, we conclude there is merit to the issue Westeen claims his trial counsel should have raised. We turn next to a consideration of whether trial counsel's failure to raise this issue constitutes a failure to perform an essential duty.

■■■■ *C. Did Westeen's trial counsel fail to perform an essential duty by not raising the continuity issue in the district court?* We start with a presumption that counsel acted competently. *See McPhillips,* 580 N.W.2d at 754. Nevertheless, this case does not present the typical situation where the alleged failure of trial counsel to take a particular action can be attributed to "improvident trial strategy, miscalculated tactics, or mistakes in judgment." *Osborn v. State,* 573 N.W.2d 917, 922 (Iowa 1998). If a criminal statute has not yet been interpreted by our court and the prevailing interpretation of nearly identical statutes in other states is favorable to the defendant, there can be no strategic reason for failing to urge adoption of the favorable interpretation of the statute at trial. As the following discussion illustrates, we have previously held under similar circumstances that trial counsel's

failure to raise an issue of first impression cannot be excused as a judgment call left to the discretion of trial counsel.

In an early case dealing with this type of error on the part of defense counsel, we stated the applicable standard to apply in judging the attorney's competency:

> The question is not, as the State contends, whether a normally competent attorney might have concluded that [the State had charged the defendant under the wrong statute]; rather, it is whether a normally competent attorney could have concluded that [this] question ... was not worth raising.

*State v. Schoelerman,* 315 N.W.2d 67, 72 (Iowa 1982); *see also State v. Allison,* 576 N.W.2d 371, 374 (Iowa 1998) (finding trial counsel failed to perform an essential duty by not objecting to State's interpretation of criminal statute); *McLaughlin v. State,* 533 N.W.2d 546, 548 (Iowa 1995) (finding counsel ineffective in failing to assert defendant's right to be present when jury inquiry was answered); *State v. Belt,* 505 N.W.2d 182, 185 (Iowa 1993) (finding that trial counsel was ineffective for failing to raise a meritorious defense). This standard does not require defense counsel to be a " 'crystal gazer' who can predict future changes in established rules of law in order to provide effective assistance to a criminal defendant." *Schoelerman,* 315 N.W.2d at 72. It only requires counsel to exercise reasonable diligence in deciding whether an issue is "worth raising." In *Schoelerman,* we concluded trial counsel rendered ineffective assistance for several reasons: (1) there were no Iowa cases that would have foreclosed the argument counsel was faulted for not making; (2) a review of the statute "would have lent substantial weight" to the defendant's argument; and (3) case law from other jurisdictions supported the defendant's position. *Id.*

The facts before us are even stronger: (1) the "keeping" element of the charged offense had never been interpreted by our court; (2) courts from other jurisdictions interpreting the same language had uniformly required proof of continuity; and (3) the legislature had instructed Iowa courts to construe the Iowa statute so as to make it "uniform with

the law of those states that enact [the uniform act]." We conclude Westeen's trial counsel failed to perform an essential duty because an attorney exercising reasonable care would have concluded that this issue was certainly worth raising. We now turn to the second prong of Westeen's ineffective-assistance-of-counsel claim.

■ D. *Prejudice.* As stated above, Westeen must also establish that he was prejudiced by his counsel's error. Prejudice is shown where "it is reasonably probable that the result of the proceeding would have been different." *Henderson,* 537 N.W.2d at 765.

We have already determined that the issue now being raised for the first time on appeal has merit. Had counsel included this issue as a ground in support of his motion for judgment of acquittal, the trial court could have applied a proper interpretation of the statute in considering whether the evidence was sufficient to support a finding that Westeen "kept" a motel room used for possessing controlled substances. We think, had this challenge been made, Westeen would have been entitled to a judgment of acquittal on the keeping-a-dwelling charge.

As we have already decided, this charge required proof that the use or possession of controlled substances was a substantial purpose for having the motel room and that such use was continuous to some degree and not merely incidental. *See Dawson,* 894 P.2d at 678–79. A single, isolated occurrence of drug-related activity is not enough *standing alone* to prove the purpose for which the property is held, or that such drug-related activity is intended to be ongoing to some extent. *See id.* On the other hand, where there is other evidence of continuity and purpose, a single instance of illegal drug activity will support a conviction. *See id.*

Turning to the evidence here, it is clear that the State proved only one incident of drug-related activity. Consequently, we must search the record to determine whether there is other evidence that would support a finding that this activity was not an isolated occurrence, merely incidental to Westeen's temporary residence in the motel room. The only evidence to which the State points is

Westeen's willingness to give his visitors some methamphetamine for free with the apparent hope that they would be paying customers in the future. Although this evidence would support a finding that Westeen intended continuing possession and use of controlled substances, it does not support a finding that this drug operation would continue in the motel room. In fact, Westeen's statement that Fritsen knew where to find him if they wanted drugs in the future implies that Westeen would *not* be in the motel room. If Westeen planned to continue operating out of the motel room, all three visitors would know where to find him, not only Fritsen. Not only is there a lack of evidence of ongoing drug activity in the motel room, the evidence introduced at trial indicated the contrary. No money was found on Westeen or in the motel room; there was no evidence that others had visited the room while Westeen occupied it; the amount of drugs found in the room was relatively small; Westeen occupied the room only for some portion of one night; and the room had not been rented beyond the night in question.

Based on the record in this case, we conclude there was insufficient evidence that Westeen "kept" the motel room for possessing or selling drugs. *See Barnes,* 339 S.E.2d at 235 (reversing conviction based on insufficiency of the evidence to prove "keeping" element where authorities found small quantity of marijuana, scales and plastic bags in defendants' trailer home); *State v. Mitchell,* 336 N.C. 22, 442 S.E.2d 24, 30–31 (1994) (same holding where evidence consisted of defendant's possession of marijuana in his car). Therefore, had Westeen's trial counsel raised this issue in his motion for directed verdict, Westeen would have been entitled to a judgment of acquittal on this charge. Clearly, Westeen was prejudiced by his counsel's ineffective assistance. This conclusion makes it unnecessary to consider whether prejudice also resulted from counsel's failure to object to the marshaling instruction and the court's response to the jury's question.

## V. *Conclusion.*

Westeen has established that he was denied the effective assistance of counsel at his

212

trial. Therefore, we may address the merits of his insufficiency-of-the-evidence claim with respect to the "keeping" element of the offense. *See State v. Rhiner*, 352 N.W.2d 258, 261 (Iowa 1984) (addressing merits of defendant's claim on appeal where failure to raise issue in district court was the result of ineffective assistance of counsel); *Schoelerman*, 315 N.W.2d at 73 (same). As we discussed above, the evidence was insufficient to support a finding that Westeen "kept" the motel room within the meaning of section 124.402(1)(e). Westeen was entitled to a judgment of acquittal on this count. Therefore, we reverse the judgment of conviction and remand this case to the district court for dismissal of the keeping-a-dwelling charge. *Cf. Schoelerman*, 315 N.W.2d at 75 (reversing judgment of conviction entered on guilty plea where no factual basis existed and ordering charge dismissed).

**REVERSED AND REMANDED.**