**STATE of Iowa, Plaintiff–Appellee,**

v.

**Douglas Scott KINGERY, Defendant–Appellant.**

**No. 08–1184.**

Court of Appeals of Iowa.

July 2, 2009.

Mark C. Smith, State Appellate Defender, and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Elisabeth S. Reynoldson, Assistant Attorney General, and Harold Denton, County Attorney, for appellee.

Considered by MAHAN, P.J., and EISENHAUER and MANSFIELD, JJ.

MAHAN, P.J.

Douglas Kingery appeals from the imposition of special sentences pursuant to Iowa Code sections 903B.1 and .2 (2007). He contends his counsel was ineffective for failing to argue that imposition of those special sentences violated his constitutional rights of equal protection and substantive due process. For the reasons that follow, we disagree and affirm.

## I. Background Facts and Proceedings.

At a plea proceeding, Kingery admitted that he coerced a minor into engaging in sex acts with him between January 1, 2005, and December 13, 2007. He pleaded guilty to sexual abuse in the third degree, which is a class "C" felony punishable by a term of imprisonment not to exceed ten years, and lascivious acts with a child, which is a class "D" felony punishable by a term of imprisonment not to exceed five years. The district court imposed consecutive indeterminate sentences and imposed special sentences pursuant to Iowa Code sections 903B.1 (life-time special sentence for class "C" felony) and 903B.2 (ten-year special sentence for class "D" felony), whereby if he violates the terms of his

parole he will be sentenced to additional imprisonment for a term not to exceed two years for a first offense and not to exceed five years for a second offense.[1]

On appeal, Kingery contends trial counsel was ineffective in failing to assert sections 903B.1 and .2 violate the federal and state constitutional provisions regarding equal protection of the laws and substantive due process.[2]

## II. Constitutional Challenges to Section 903B.

■ Claims of ineffective assistance of counsel have their basis in the Sixth Amendment to the United States Constitution, and we therefore conduct a de novo review. *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008).

■ To establish a claim of ineffective assistance of counsel, a defendant must prove by a preponderance of the evidence (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Id.* A defendant's failure to prove either element is fatal to the claim. *State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003). Ordinarily, we preserve ineffective-assistance claims for postconviction proceedings. *See State*

---

1. Iowa Code section 903B provides:

 1. A person convicted of a class "C" felony or greater offense under chapter 709, or a class "C" felony under section 728.12, shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custody of the director of the Iowa department of corrections for the rest of the person's life, with eligibility for parole as provided in chapter 906. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole. The person shall be placed on the corrections continuum in chapter 901B, and the terms and conditions of the special sentence, including violations, shall be subject to the same set of procedures set out in chapters 901B, 905, 906, and chapter 908, and rules adopted under those chapters for persons on parole. The revocation of release shall not be for a period greater than two years upon any first revocation, and five years upon any second or subsequent revocation. A special sentence shall be considered a category "A" sentence for purposes of calculating earned time under section 903A.2.

 2. A person convicted of a misdemeanor or a class "D" felony under chapter 709, section 726.2, or section 728.12 shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the custo-

dy of the director of the Iowa department of corrections for a period of ten years, with eligibility for parole as provided in chapter 906. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole. The person shall be placed on the corrections continuum in chapter 901B, and the terms and conditions of the special sentence, including violations, shall be subject to the same set of procedures set out in chapters 901B, 905, 906, and 908, and rules adopted under those chapters for persons on parole. The revocation of release shall not be for a period greater than two years upon any first revocation, and five years upon any second or subsequent revocation. A special sentence shall be considered a category "A" sentence for purposes of calculating earned time under section 903A.2.

2. U.S. Const. amend. XIV; Iowa Const. art. I, §§ 6, 9. The Equal Protection and Due Process Clauses of the United States and Iowa Constitutions are nearly identical in scope, import, and purpose. *See State v. Wade*, 757 N.W.2d 618, 624 (2008) (equal protection) *State v. Hernandez–Lopez*, 639 N.W.2d 226, 237 (Iowa 2002) (due process). Where neither party contends the Iowa Constitution should be treated differently than its federal counterpart, we use the same analysis for both. *State v. Dudley*, 766 N.W.2d 606, 624 (Iowa 2009).

*v. Bearse,* 748 N.W.2d 211, 214 (Iowa 2008). However, we find the record adequate to address Kingery's ineffective-assistance-of-counsel claims on direct appeal. *See State v. Westeen,* 591 N.W.2d 203, 207 (Iowa 1999).

 Our task is to determine whether defense counsel breached an essential duty by failing to raise the issues now asserted and, if so, whether Kingery was prejudiced by the failure. *Maxwell,* 743 N.W.2d at 195. We start with a presumption that counsel acted competently. *Westeen,* 591 N.W.2d at 210. In general, trial counsel is not incompetent in failing to pursue an issue that is without merit. *See id.* at 207. Thus, our first step is to consider whether there is any merit to the issues Kingery claims his counsel should have raised. *Id.* If there is merit to the issues, we must then decide whether counsel's action fell outside the normal range of competency expected of criminal defense attorneys. *Id.* If we conclude that counsel failed to perform an essential duty, we will then proceed to determine whether Kingery was prejudiced by such a failure. *Id.*

 *A. Equal Protection.* Equal protection under the law is guaranteed by the federal and state constitutions. "This principle requires that similarly situated persons be treated alike under the law." *State v. Wade,* 757 N.W.2d 618, 624 (Iowa 2008) (citation omitted). In *Wade* our supreme court concluded that "sex offenders are not similarly situated to other criminal offenders, and therefore, under this challenged classification, Iowa Code section 903B.2 does not violate equal protection." *Id.* at 626. We find *Wade* controlling in the present case and similarly reject Kingery's equal protection challenge to section 903B.1.

Kingery acknowledges that sections 903B.1 and .2 "need only be rationally related to a legitimate governmental purpose." There is no doubt that the State has a strong interest in protecting its citizens from sex crimes. *See id.* at 625. Kingery argues that because Iowa already has mechanisms in place for imposing more severe punishment upon recidivist sex offenders, *see* Iowa Code ch. 901A (enhanced sentencing) and ch. 229A (civil commitment for sexually violent predators), the special sentences imposed under section 903B are "not necessary and … not rationally related to the problem sought to be addressed." This argument is unavailing.

 "As long as the classificatory scheme chosen by the legislature rationally advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods that we, as individuals, perhaps would have preferred." *Wade,* 757 N.W.2d. at 626 (internal quotation and citation omitted). The classification found in sections 903B.1 and .2 rationally advances the State's objective in protecting its citizens from sex crimes. *Id.* Trial counsel was not ineffective in failing to raise this meritless claim.

*B. Substantive Due Process.* Kingery also contends sections 903B.1 and 903B.2 violate his right of substantive due process. This constitutional challenge was not addressed in *Wade. See id.* at 622–23 (noting Wade waived a substantive due process challenge).

 Substantive due process "prevents the government from interfering with rights implicit in the concept of ordered liberty." *State v. Seering,* 701 N.W.2d 655, 662 (Iowa 2005) (citations omitted). In evaluating any statutory challenge, "we must remember that statutes are cloaked with a presumption of constitutionality." *State v. Gonzalez,* 718 N.W.2d 304, 307 (Iowa 2006); *Seering,* 701 N.W.2d at 661. The challenger must

prove the unconstitutionality beyond a reasonable doubt, *Seering,* 701 N.W.2d at 661, and to overcome the presumption, "[t]he challenger is required to refute all reasonable bases upon which the statute could be declared constitutional." *Gonzalez,* 718 N.W.2d at 307.

In a substantive due process examination, first we determine the "nature of the individual right involved." *Seering,* 701 N.W.2d at 662. If a fundamental right is involved, we apply a strict scrutiny analysis. *See State v. Groves,* 742 N.W.2d 90, 92 (Iowa 2007) ("Strict scrutiny requires us to determine whether the statute is narrowly tailored to serve a compelling state interest."). "Only fundamental rights and liberties which are deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty qualify for such protection." *Seering,* 701 N.W.2d at 664 (internal quotations and citations omitted). On the other hand, if a fundamental right is not involved, we apply a rational basis analysis. *Id.* at 665.

Our supreme court has stated:

It is ultimately our duty to ensure that claims that constitutional rights have been violated are properly considered. This duty arises in part from our related duty to avoid constitutional questions not necessary to the resolution of an appeal. Both these considerations create a general requirement that claims involving fundamental rights *must identify the claimed right with accuracy and specificity so that our analysis proceeds on appropriate grounds.* In the absence of a sufficient presentation of a claimed right, we have not hesitated in the past to reconsider and realign a party's arguments to properly address the true constitutional question presented.

*Id.* at 663 (emphasis added) (citations omitted).

Kingery is challenging the imposition of extended parole following incarceration. He claims sections 903B.1 and .2 infringe upon his "fundamental right to liberty, privacy, and freedom from governmental restraint." The State responds by asserting the interest at hand is "whether the defendant has a fundamental right to be free from punishment following entry of conviction."

[P]arolees are on the "continuum" of state-imposed punishments. On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment. As this Court has pointed out, parole is an established variation on imprisonment of convicted criminals. . . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abides by certain rules during the balance of the sentence. In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements.

*Samson v. California,* 547 U.S. 843, 850, 126 S.Ct. 2193, 2198, 165 L.Ed.2d 250, 258 (2006) (internal quotations and citations omitted). A parolee has no fundamental liberty interest in freedom from extended supervision. *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451, 459 (1976) ("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."); *see also Lyon v. State,* 404 N.W.2d 580, 583 (Iowa Ct.App.1987) (noting that "[o]nce a valid conviction has been entered, the defendant has been constitu-

tionally deprived of his liberty to be conditionally released"). Consequently, we reject Kingery's claim that sections 903B.1 and .2 impinge upon a fundamental right. *Cf. People v. Oglethorpe*, 87 P.3d 129, 134 (Colo.Ct.App.2003) (rejecting strict scrutiny for substantive due process challenge to Colorado Sex Offender Lifetime Supervision Act of 1998, which requires imposition of indefinite sentence upon sex offender because "[a]n adult offender has no fundamental liberty interest in freedom from incarceration").

▮ We conclude the limited privacy and liberty interests at issue are entitled to only rational basis review. A rational basis standard requires us to consider whether there is "a reasonable fit between the government interest and the means utilized to advance that interest." *State v. Hernandez–Lopez*, 639 N.W.2d 226, 237 (Iowa 2002). As discussed by our supreme court, "[t]he State has a strong interest in protecting its citizens from sex crimes." *Wade*, 757 N.W.2d at 625. Victims of sex crimes suffer from devastating effects, including physical and psychological harm. *See id.* at 626 (discussing that the devastating effects of sex crimes on victims provide a rational basis for classifying sex offenders differently). Furthermore, "[t]he risk of recidivism posed by sex offenders is 'frightening and high.'" *Wade*, 757 N.W.2d at 626 (quoting *Smith v. Doe*, 538 U.S. 84, 103, 123 S.Ct. 1140, 1153, 155 L.Ed.2d 164, 184 (2003)); *Seering*, 701 N.W.2d at 665.

Kingery argues that "the assumption that the risk of recidivism posed by sex offenders is frightening and high is unwar-

ranted."[3] Yet, he acknowledges that sex offenders are more likely than non-sex offenders to be rearrested for a sex offense.[4] We find there is a reasonable fit between the State's interest in protecting its citizens from sex crimes and the extended supervision required under sections 903B.1 and .2.

Because there is a rational basis for a special sentence imposed pursuant to Iowa Code section 903B.1 and .2, we find there is no merit to Kingery's claim that the provision violates his substantive due process rights. Kingery's trial counsel was not ineffective in failing to raise an issue that has no merit. *Westeen*, 591 N.W.2d at 207.

### III. Conclusion.

Iowa Code sections 903B.1 and .2 do not violate Kingery's equal protection or substantive due process rights. His claims of ineffective assistance of counsel based on the failure to assert the constitutional challenges are thus without merit. We affirm the imposition of special sentences pursuant to Iowa Code sections 903B.1 and .2.

**AFFIRMED.**

---

3. Kingery cites a report from the Bureau of Justice Statistics that concludes that sex offenders are less likely than non-sex offenders to be rearrested for any offense.

4. As one court has stated, "The legislature's assumptions about recidivism may be errone-

ous, but they are arguably correct and that is sufficient on a rational basis review to protect the legislative choice from constitutional challenge." *State v. Radke*, 259 Wis.2d 13, 657 N.W.2d 66, 75 n. 38 (2003).