# IN THE COURT OF APPEALS OF IOWA

No. 24-1077
Filed August 6, 2025

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**CINDY LOUISE RANDEL,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Guthrie County, David Faith, Judge.

A defendant appeals her convictions for four drug-related offenses.
**AFFIRMED.**

Ronald W. Kepford, Winterset, for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant
Attorney General, for appellee.

Considered without oral argument by Tabor, C.J., and Ahlers and Langholz,
JJ.

**TABOR, Chief Judge.**

A jury convicted Cindy Randel of possessing methamphetamine with intent to deliver, failing to affix a drug tax stamp, maintaining a drug house, and possessing marijuana. Randel appeals, conflating her challenge to the sufficiency of the evidence with her claim that the district court erred in denying her motion for new trial. Finding sufficient evidence supporting Randel's convictions and any challenge to the weight of the evidence both unpreserved and waived on appeal, we affirm.

I.      **Facts and Prior Proceedings**

Guthrie County Sheriff's Deputy Shane Jones went to Randel's house in March 2023 to serve a civil paper. While he was standing at the door, he "detected a strong odor of marijuana coming from the house." After leaving the residence, he spoke to Panora Police Chief Matt Reising, who obtained a search warrant. Chief Reising, Deputy Jones, and two other officers conducted the search later that night.

The officers discovered items of interest inside Randel's house including "many, many Zip-Loc baggies"; "rubber-type tubing"; "a mirror, razor blade, spoon, pipe cleaners, little plastic round-like containers"; smoking devices; a digital scale; and a safe. They also found over eighty grams of a "crystalline substance" in "separate baggies" that tested positive for methamphetamine, along with a baggie containing a "green leafy substance" that the officers believed to be marijuana. Plus, the officers found two wallets in Randel's bedroom. One contained Randel's driver's license and about $170 in cash. The other contained $20, $50, and $100 bills—totaling around $2700.

After completing their search, the officers took Randel to the sheriff's office and advised her of her *Miranda* rights. Randel told the officers that the seized property "was hers." She added that the methamphetamine "was for her personal use."

The State charged Randel in a seven-count trial information: (I) possession with intent to deliver methamphetamine, a class "B" felony, in violation of Iowa Code section 124.401(1)(b)(7) (2023); (II) failure to affix a drug tax stamp, a class "D" felony, in violation of section 453B.12; (III) maintaining a drug house, an aggravated misdemeanor, in violation of section 124.402(1)(e); (IV) possession of marijuana, a serious misdemeanor, in violation of section 124.401(5); and (V-VII) three counts of unlawful possession of prescription drugs, serious misdemeanors, in violation of section 155A.21.

At trial in April 2024, the State presented testimony from Deputy Jones, Chief Reising, the two other officers who executed the search warrant, and a laboratory technician from the Iowa Division of Criminal Investigation (DCI). The State also presented photos of the inside of Randel's house and the items the officers seized during the search, along with the DCI laboratory report showing that 83.96 grams of the "crystalline substance" the officers seized tested positive for methamphetamine. At the close of the State's case, the district court granted Randel's motion for judgment of acquittal as to counts V through VII. The jury found her guilty of the remaining four counts.

Randel moved for a new trial, contending there was "insufficient evidence for a rational trier of fact to conclude the Defendant's guilt beyond a reasonable

doubt." The State resisted, citing the correct weight-of-the-evidence standard for a motion for new trial. *See State v. Ary*, 877 N.W.2d 686, 706 (Iowa 2016).

But when the court denied the motion, it echoed the incorrect standard from Randel's motion. *See State v. Root*, 801 N.W.2d 29, 30 (Iowa Ct. App. 2011) ("In ruling on a motion for a new trial in a criminal case, the district court is to apply a weight-of-the-evidence standard."). The court reasoned: "[T]here was sufficient evidence for the jury to reach the verdict that they did based on not only the quantity of methamphetamine discovered but the associated paraphernalia and the testimony of law enforcement regarding the use of such paraphernalia."[1]

The court then entered judgment and sentenced Randel to concurrent indeterminate prison terms totaling twenty-five years, with a one-third mandatory minimum sentence on the methamphetamine count. *See* Iowa Code § 124.413. Randel appeals.

## II. Scope and Standards of Review

Challenges to the sufficiency of the evidence are distinct from challenges to the weight of the evidence. *See Ellis*, 578 N.W.2d at 658–59. We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Cook*, 996 N.W.2d 703, 708 (Iowa 2023). We are bound by the jury's verdict if it is supported by substantial evidence. *State v. Slaughter*, 3 N.W.3d 540, 546 (Iowa 2024). Substantial evidence exists if the record "would convince a rational fact

---

[1] The court's written order stated that it denied Randel's motion for new trial "[f]or the reasons stated on the record." On appeal, Randel does not assert that the district court applied the wrong standard or request remand for the court to reconsider the motion "applying the correct weight-of-the-evidence standard." *Cf. State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998).

finder the defendant is guilty beyond a reasonable doubt." *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022) (citation omitted). "Evidence which merely raises suspicion, speculation, or conjecture is insufficient." *State v. Casady*, 491 N.W.2d 782, 787 (Iowa 1992). "We consider all evidence, not just the evidence supporting the conviction, and view the evidence in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (citation omitted).

We review rulings on new trial motions for an abuse of discretion. *Ary,* 877 N.W.2d at 706. The court may grant a motion under Iowa Rule of Criminal Procedure 2.24(2)(b) if the verdict is contrary to the weight of the evidence. *Id.* "A verdict is contrary to the weight of the evidence where a greater amount of credible evidence supports one side of an issue or cause than the other." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) (cleaned up).

## III.     Analysis

On appeal, Randel argues that the district court erred in denying her motion for new trial because the State offered insufficient evidence to support her convictions. The State reads her argument as presenting two distinct challenges: one to the sufficiency of the evidence and one to the weight of the evidence.

We take a less-generous view of Randel's argument. True, at the beginning of her appellant's brief, Randel cites the weight-of-the-evidence standard applied to new trial motions. But the rest of her argument raises a sufficiency challenge. And Randel did not urge the correct weight-of-the-evidence standard in her motion for new trial.

To the extent Randel now contends the verdict was against the weight of the evidence, we find that challenge unpreserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Randel also waives that challenge by failing to adequately present it on appeal. *See* Iowa R. App. P. 6.903(2)(a)(8)(3).

So we view Randel's claim as only a challenge to the sufficiency of the evidence.[2] We will address each count in turn.

**A. Possession of Methamphetamine with Intent to Deliver**

The jury could convict Randel of possessing methamphetamine with intent to deliver as charged in count I if the State proved:

> 1. On or about the 19th day of March, 2023 [Randel] knowingly possessed methamphetamine, a controlled substance.
> 2. [Randel] knew that the substance she possessed was methamphetamine, a controlled substance.
> 3. [Randel] possessed the controlled substance with the intent to deliver a controlled substance.[3]
> 4. The amount of methamphetamine knowingly possessed with intent to deliver as set forth in elements 1–3, exceeded 5g.

*See* Iowa Code § 124.401(1)(b)(7).

Randel contends that the State failed to prove the third element—her intent to deliver. According to Randel, the "only evidence presented by the State

---

[2] When a defendant proceeds to trial and is convicted of a crime, the "trial itself raises the issue of the sufficiency of the evidence, and the verdict is the decision on the issue." *State v. Crawford*, 972 N.W.2d 189, 198 (Iowa 2022). "Criminal charges found to lack sufficient evidentiary support on appeal are dismissed rather than remanded for a retrial because of the Double Jeopardy Clause." *State v. Chapman*, 944 N.W.2d 864, 875 (Iowa 2020).

[3] The court defined "deliver" or "delivery" as "the actual, constructive, or attempted transfer of a substance from one person to another."

regarding [her] intent to deliver was the quantity of the methamphetamine found, the presence of a scale, and $2,725." She points out that the State did not present evidence of law enforcement seeing her distributing or purchasing drugs. And she notes the State lacked logbooks or phone records documenting drug sales.

"[D]irect and circumstantial evidence are equally probative for the purposes of proving guilt beyond a reasonable doubt." *State v. Bentley*, 757 N.W.2d 257, 262 (Iowa 2008) (cleaned up). "Because it is difficult to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and the inferences that can be drawn from that evidence." *State v. Grant*, 722 N.W.2d 645, 647–48 (Iowa 2006). In intent-to-deliver cases, that circumstantial evidence often includes "the manner of packaging drugs, large amounts of unexplained cash, and the quantity of drugs possessed." *Id.* at 648. The State may also offer testimony from police officers with experience in drug enforcement to help the jury determine intent to deliver. *See id.*

Viewing the record in the light most favorable to the State, we find sufficient proof of Randel's intent to deliver. The State presented evidence that Randel had over eighty grams of methamphetamine in her home—packaged in separate baggies containing varying quantities. Randel also had several packages of empty baggies, a digital scale, and a large amount of cash kept in a separate wallet. Based on his training and experience, Deputy Jones testified that those items showed the "distribution or selling" of narcotics. He explained that the "large amount" of methamphetamine, coupled with the "scale, the baggies, [and] the large amount of cash," was "not typical of personal use." Deputy Kent Gries similarly testified that in his professional opinion, the methamphetamine and other items

found in Randel's home "were possessed with the intent to distribute, deliver, or sell." He based his opinion on the "sheer quantity of the product, the presence of a digital scale . . . , and the presence of a large quantity of small clear Zip-Loc baggies."

The jurors were free to credit the officers' explanations. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive."). From the totality of the evidence, a reasonable jury could infer Randel intended to deliver methamphetamine. *See State v. Irving*, No. 21-1839, 2023 WL 1808507, at *3 (Iowa Ct. App. Feb. 8, 2023).

## B. Failure to Affix a Drug Tax Stamp

The jury could convict Randel of failure to affix a drug tax stamp as charged in count II if the State proved:

> 1. On or about the 19th day of March 2023 [Randel] knowingly possessed a taxable substance . . . . [4]
> 2. [Randel] possessed in this State:
>     a. Seven or more grams of methamphetamine.
> 3. The taxable substance that [Randel] possessed did not have permanently affixed to it a stamp, label or other indication of payment of the state tax imposed on the substance.

*See* Iowa Code §§ 453B.12; 453B.3; 453B.1.

Randel claims that "the State failed to prove [she] did not have a tax stamp for the contraband in her possession" because the officers did not thoroughly search every room of her house. But two of the officers who executed the search testified that the baggies containing methamphetamine did not have tax stamps

---

[4] The court instructed the jury that a "taxable substance" means a "controlled substance" and that "methamphetamine is a controlled substance."

affixed to them. And even if Randel *possessed* tax stamps that the officers didn't find, failing to *affix* the stamps to the taxable substance "immediately" is an element of the crime under Iowa Code section 453B.12. *See State v. White*, 545 N.W.2d 552, 556–57 (Iowa 1996). Substantial evidence supports this conviction.

### C. Maintaining a Drug House

The jury could convict Randel of maintaining a drug house as charged in count III if the State proved:

> 1. On or about the 19th [day] of March 2023 [Randel] knowingly kept or permitted another to keep or maintain a dwelling.
> 2. [Randel] knew a substantial purpose for the keeping or maintaining of such place was for the on-going storage, possession, use or sale of one or more controlled substances.

*See* Iowa Code § 124.402(1)(e).

Randel argues that the State failed to prove this offense because she "lives in the house in question." And she contends that the State offered "no evidence that people are coming and going from that house for the purpose of using drugs."

Under Iowa Code section 124.402(1)(e), Iowa's "crack-house statute,"

> [t]he state need not prove that the property was used for the exclusive purpose of keeping or distributing controlled substances, but such use must be a substantial purpose of the users of the property, and the use must be continuous to some degree; incidental use of the property for keeping or distributing drugs or a single, isolated occurrence of drug-related activity will not suffice. The purpose for which a person uses property and whether such use is continuous are issues of fact to be decided on the totality of the evidence of each case. . . .

*State v. Westeen*, 591 N.W.2d 203, 209 (Iowa 1999) (cleaned up). Living at the property in question does not preclude conviction under the statute. *See State v. Carr*, No. 04-0817, 2005 WL 1106334, at *5 (Iowa Ct. App. May 11, 2005) ("[C]ontrolled substance use is often subordinate to a legitimate use of the

property, such as a dwelling or place of business. . . . [T]he other uses of the premises are irrelevant so long as a substantial use of the property was for the ongoing use of controlled substances.").

Granted, the State did not present direct evidence that Randel was dealing drugs from her home. But the large quantity of methamphetamine, baggies, cash, and other paraphernalia found inside the house were enough circumstantial evidence from which a reasonable jury could infer that a substantial purpose of Randel's home was keeping or possessing controlled substances. *See id.*; Iowa Code § 124.402(1)(e) (prohibiting a person from maintaining a dwelling that is used for keeping or possessing controlled substances). Thus, sufficient evidence supports Randel's conviction for maintaining a drug house.

## D. Possession of Marijuana

The jury could convict Randel of possessing marijuana as charged in count IV if the State proved:

> 1. On or about the 19th day of March, 2023, [Randel] knowingly or intentionally possessed marijuana, a controlled substance.
> 2. [Randel] knew that the substance she possessed was marijuana, a controlled substance.

*See* Iowa Code § 124.401(5).

Randel challenges the State's proof that the "green leafy substance" found in her home was marijuana. As Randel points out, the "State did not send a sample of what it alleged was marijuana into the DCI lab for testing, nor was there a field test conducted on the substance." She claims that the officers' testimony was insufficient proof that the substance was marijuana. And she suggests that the

substance could have been "legal hemp, which is virtually impossible to distinguish from marijuana through visual inspection."

To support her argument, Randel cites *State v. Brubaker*, 805 N.W.2d 164 (Iowa 2011), *abrogated on other grounds by Crawford*, 972 N.W.2d at 197–98. In *Brubaker*, our supreme court found a criminalist's testimony that pills were "consistent in appearance with a pharmaceutical preparation containing Clonazepam"—without more—was "insufficient to establish they were, in fact, Clonazepam." *Id.* at 172–73. But "*Brubaker* does not stand for the proposition that lab testing is always required to establish the identity of a controlled substance. It merely stands for the proposition that the state must present sufficient evidence to establish the identity of a controlled substance, whether direct or circumstantial." *State v. Mumford*, 14 N.W.3d 346, 354–55 (Iowa 2024).

Circumstantial evidence of a controlled substance's identity may include "the physical appearance of the substance involved in the transaction," "evidence that the substance was called by the name of the illegal narcotic by the defendant or others in [her] presence," and "whether the known odor of the substance identified it as an illegal drug." *Id.* at 355 (quoting *Brubaker*, 805 N.W.2d at 173). Officers' testimony may identify a substance as marijuana beyond a reasonable doubt. *See id.* (collecting cases).

The State presented substantial evidence supporting the jury's finding that the "green leafy substance" in Randel's home was marijuana. The officers found the substance—packaged in a vacuum-sealed plastic baggie—inside a locked

safe in Randel's bedroom.[5]  Chief Reising testified that he had been trained in "identifying various controlled substances" including marijuana.  He explained that marijuana is a "green leafy substance" with a "very distinct" odor.  And he testified that the "green leafy substance" inside the safe was "consistent with the training" he had received "on identifying marijuana."  Deputy Gries also testified that he had been trained in identifying marijuana.  He described marijuana as a "green leafy substance usually in buds unless it's been ground up.  The most distinctive feature of it is oftentimes its odor."  As to the substance inside the safe, he testified: "My opinion is that that was very likely marijuana in this vacuum-sealed clear baggie."  He elaborated: "It's the bud-like structure.  It's green plant material found in a safe with other items I believed to be drugs in a house that smelled of marijuana, so in context that was my opinion that that was marijuana."  Along with the officers' testimony, the State presented photos showing the substance "had the distinctive look of marijuana" the officers described.  *Id.* at 355.

Viewing the record in the light most favorable to the State, a reasonable jury could conclude that the substance Randel possessed was marijuana.  *See id.*  And contrary to Randel's contentions, the State need not disprove the possibility that a substance alleged to be marijuana is legal hemp.[6]  *See id.* at 355–56 ("Mumford never raised this issue at trial, and, in any case, 'the State is not required to negate any and all rational hypotheses of the defendant's innocence.'" (citation omitted)).

---

[5] That safe also contained several clear plastic baggies of methamphetamine, mail addressed to Randel, and Randel's checkbook.

[6] As the State points out, Randel raised the possibility that the substance was legal hemp for the first time in her motion for new trial.

Finding sufficient evidence supporting all of Randel's convictions, we affirm.

**AFFIRMED.**