# IN THE COURT OF APPEALS OF IOWA

No. 14-1442
Filed September 28, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DERRICK DEONDRE DANIELS,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Kellyann M Lekar, Judge.

Derrick Daniels appeals a conviction and sentence for possession of more than fifty grams of cocaine base with intent to distribute and possession of a taxable substance with no tax stamp affixed. **AFFIRMED.**

Rees Conrad Douglas, Sioux City, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., Vaitheswaran, J., and Goodhue, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**GOODHUE, Senior Judge.**

Derrick Deondre Daniels has appealed from a bench trial finding him guilty of possession of more than fifty grams of cocaine base with intent to distribute and possession of a taxable substance with no stamp tax affixed and the sentences entered.

## I.     Background Facts and Proceedings

On January 6, 2013, the Waterloo Police Department was conducting surveillance of certain individuals and a vehicle believed to be involved in a cocaine trafficking operation. Officer Nicholas Barry was watching the Waterloo bus station when he saw an individual, later determined to be Derrick Daniels, get off of a Trail Ways bus arriving from Chicago. He was carrying a black duffle bag and walked toward a silver SUV. The silver SUV, driven by Latosha Daniels, had also been under surveillance by the police department. Daniels was observed getting into the vehicle carrying the black duffle bag. The vehicle was later stopped, and the duffle bag was found on the passenger side of the vehicle between Daniel's feet. The bag contained what was later determined to be almost seventy grams of cocaine base or crack cocaine. There was no drug stamp affixed to the duffle bag or the crack cocaine.

The silver vehicle driven by Latosha had been stopped earlier in the day and had been searched. It contained no black duffle bag at that time and had continued to be under surveillance until it was stopped after departing from the bus station. Immediately thereafter, Latosha's residence was searched. Plastic baggies, two razors, and an electronic scale were found, all items frequently

used by drug dealers. A pill box bearing Derrick Daniels name was also found at the residence.

Daniels was arrested and charged with possession of cocaine base with the intent to deliver of less than fifty grams, which was later amended to more than fifty grams, and with possession of a controlled substance with no drug stamp affixed. While in jail, Daniels initiated a conversation with Deputy Sheriff Wayne Sidles in which Daniels stated he brought the "stuff" back for "Big Wil" and indicated he wanted to cut a deal but terminated the conversation by indicating he wanted to talk to an attorney.

Daniels waived his right to a jury and stood trial before the court. Officer Joshua Zubak, a Waterloo police officer knowledgeable about the drug scene in Waterloo, testified that seventy grams of crack cocaine was not consistent with the amount ordinarily possessed by a user. He further testified that seventy grams of crack in Waterloo would sell for about $100 per gram or $7000.

Daniels was found guilty of possession of more than fifty grams of cocaine with intent to distribute and also of possession of a controlled substance without a tax stamp affixed. Daniels was sentenced to fifty years in prison with a mandatory one-third minimum sentence on the possession-with-intent-to-distribute charge and five years in prison on the charge of failure to affix a drug stamp. The sentences were ordered to run concurrently.

Daniels has appealed claiming: (1) insufficiency of the evidence to support conviction; (2) the sentence violated the clauses of the state and Federal Constitutions prohibiting cruel and unusual punishment; and (3) the sentence

imposed violated the Equal Protection Clause of both the state and Federal Constitution.

## II.      Sufficiency of the Evidence

### A.      Preservation of Error

A motion for judgment for acquittal was made, but when the trial is to the court, the sufficiency of the evidence claim may be made without a motion. *See State v. Abbas*, 561 N.W.2d 72, 74 (Iowa 1997).

### B.      Standard of Review

Sufficiency of the evidence claims are reviewed for errors of law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

### C.      Discussion

Evidence is considered in the light most favorable to the State when reviewing sufficiency of the evidence claims. *Id.* If the evidence is such that it can convince a rational jury the defendant is guilty beyond a reasonable doubt, substantial evidence is present. *Id.* Daniels contends substantial evidence does not show he was in possession of the crack cocaine. Daniels was seen carrying the duffle bag containing the cocaine from the bus station to the awaiting vehicle. He was in sole possession of the bag containing the cocaine base. Proof of knowledge is not required but may be inferred when the accused has exclusive possession. *State v. Reeves*, 209 N.W.2d 18, 23 (Iowa 1973). The inference may be rebutted, but in this case no conflicting evidence was offered. *See id.*

To the extent Daniels contends the State failed to prove intent, his statements to law enforcement after his arrest indicated he knew he was carrying something he could not legally possess. The trial court found "defendant himself

indicated to police that he knew about the drugs in the bag and he was carrying them for someone else." Daniels cites cases involving constructive possession, but Daniels's possession was direct and in-fact possession. The record contains substantial evidence beyond a reasonable doubt to support both charges.

### III. Cruel and Unusual Punishment

### A. Preservation of Error

A sentence that is claimed to be cruel and unusual is a challenge to the legality or constitutionality of the sentence imposed and can be raised at any time. *State v. Lathrop*, 781 N.W.2d 288, 293 (Iowa 2010).

### B. Standard of Review

Constitutional issues are reviewed de novo, but statutes are presumed constitutional, and unconstitutionality must be proved beyond a reasonable doubt. *State v. Tripp*, 776 N.W.2d 855, 857 (Iowa 2010).

### C. Discussion

Both the Eighth Amendment of the United States Constitution and article 1, section 17 of the Iowa Constitution prohibit cruel and unusual punishment. An attack on a sentence as a violation of the constitutional provision prohibiting cruel and unusual punishment can be either as it applies to the particular party's sentence or a categorical or facial challenge to the statute itself. *State v. Oliver*, 812 N.W.2d 636, 640 (Iowa 2012). Initially, Daniels appears to contend that the sentence he received is excessively severe and is grossly disproportionate as to him personally.

To determine whether the particular sentence given to Daniels is disproportionate to the crime, we apply a three-step analysis set out in *Solem v.*

*Helms*, 463 U.S. 277, 296-300 (1983). The first step is to determine whether the sentence leads to an inference of gross disproportionality. *Oliver*, 812 N.W.2d at 647. If the threshold step is satisfied, we compare the challenged sentence to other crimes within our jurisdiction and then compare the sentence to sentences in other jurisdictions for the same or similar crimes. *Id.* Even though we impose a more rigorous review under the Iowa Constitution than the United States Constitution, it is a high burden, and it is rare that the threshold is met. *Id.* at 650.

Our preliminary task is to balance the gravity of the crime with the severity of the sentence imposed. *State v. Bruegger*, 773 N.W.2d 862, 873 (Iowa 2009). The legislature is considered the most reliable objective indicator of community standards; therefore, we defer to legislative judgments as to what punishment is applicable to a specific crime. *Id.* A broadly-framed criminal statute and dramatic enhancement for repeat offenders are factors that allow an individualized showing. *Id.* at 884. If there is no unusual combination of features that converge to create a higher risk of gross disproportionality, then Daniels is limited to a facial or categorical attack. *See id.* Our inquiry becomes whether this is one of those rare cases where an individual assessment of the punishment as it relates to Daniels should be granted. We think not.

Daniels has not been convicted of a broadly-framed crime. Cocaine trafficking is exactly what Iowa Code section 124.401(1)(a)(3) (2013) was designed to prevent, and the statute is precise in its application. The cited section enhances the sentence based on large quantities precisely defined. The convergence of factors present in *Bruegger*, 773 N.W.2d at 884, allowing the

court to consider an individualized treatment to determine gross disproportionality, is not present. Daniels tried to use his young age as factor. He was twenty-two years old at the time he committed the crime. However, he was an adult, albeit a young adult. Mandatory minimums have been held to not apply to juveniles or "youthful offenders" but the cases make it clear that adults were in a different category, implying they should be treated as adults. *See State v. Lyle*, 854 N.W.2d 378, 403 (Iowa 2014). In *Bruegger*, 773 N.W.2d at 876-77, the defendant was twenty-one years old, but his age was not mentioned as a factor requiring an individually applied test. Daniels cannot meet the initial criteria in attempting to challenge his particular sentence. He must resort to a facial or categorical challenge to the applicable statute. *See Oliver*, 812 N.W.2d at 640.

In a categorical attack on a statute, we must look to indications of a national consensus as to a particular placement and the culpability of the offender considering the crime committed and the severity of the punishment. *Id.* Daniels provides examples from the federal system and Minnesota system, both of which reputably would have resulted in a lesser period of incarceration. The comparisons do not consider the totality of the Iowa criminal justice system, which includes indeterminate sentences, probation, and deferred judgments. *See* Iowa Code §§ 901.10, 902.3, 907.3. Also, two other jurisdictions is a sparse comparison to make a meaningful assessment of a national consensus. Drug abuse is an accepted community problem, and the legislature has exercised its right to establish policy to control the possession and distribution of controlled substances and to set the appropriate punishment for violations.

Finally, we must determine whether the sentencing practice serves a legitimate penological goal. *Oliver*, 812 N.W.2d at 646. Deterrence and incapacitation are two of the four penological justifications for criminal punishment. *Id.* Fixing an applicable term of incarceration is generally within the province of the legislature. *Rummel v. Estelle*, 445 U.S. 263, 275-76 (1980). In this case, the underlying sentence is dependent on the amount of crack cocaine involved, indicating the degree of culpability. The mandatory minimum can be disregarded if mitigating circumstances exist. Iowa Code § 901.10. The statute represents difficult choices a legislature must make. We do not sit as a "superlegislature" to second guess legislative policy. *Ewing v. California*, 538 U.S. 11, 28 (2003). Iowa Code section 124.401(1)(a)(3) does not contextually or facially violate the cruel and unusual probation of the Iowa or the United States Constitutions.

### IV.    Equal Protection Issue

### A.    Error Preservation and Standard of Review

Again, Daniels is attacking his sentence as being illegal because it is constitutionally infirm. As such, error preservation rules are not applicable, and the review is de novo. *Oliver*, 812 N.W.2d at 639.

### B.    Discussion

To trigger an equal protection claim, the challenger must initially show that he or she is not treated as others similarly situated. *In re Det. of Morrow*, 616 N.W.2d 544, 548 (Iowa 2000).

Daniels contends that the statute is subject to a strict-scrutiny analysis because his liberty and freedom from restraint are at stake. He asserts that

these are fundamental rights and strict scrutiny is appropriate. *See Wright v. Dep't of Corr.*, 747 N.W.2d 213, 216 (Iowa 2008). However, an adult offender has no fundamental liberty interest in freedom from incarceration. *State v. Kingery*, 774 N.W.2d 309, 314 (Iowa Ct. App. 2009).

Daniels also contends a strict analysis is applicable because there is a racial disparity in crack cases. Strict scrutiny applies when a race-based disparity exists. *Varnum v. Brien*, 763 N.W.2d 862, 886 (Iowa 2009). But for the strict scrutiny analysis to be applicable, the statute must reflect disparate treatment of the subject classification, not merely a disparate impact. *King v. State*, 818 N.W.2d 1, 24 (Iowa 2012). Iowa Code section 124.401(1)(a) treats black and white crack dealers the same. As a practical matter, bright lines are frequently blurred and do not exist in determining whether strict scrutiny or rational scrutiny should be applied and whether the statute indirectly carves out a protected class. In the end, the analytical tools tend to merge and become dependent on the underlying policy reasons for the legislative decision resulting in what appears to be disparate treatment. In that vein, the policy reasons for what appears to be disparate treatment of crack and powder cocaine must be considered.

Daniels's claim is initially based on an assumption that African-American people prefer crack cocaine and Caucasian people prefer powder cocaine. He then proceeds on the assumption that powder cocaine and crack cocaine are similar substances. Daniels bases his claim on the premise that persons charged with distributing powder cocaine and crack cocaine are similarly situated. But, cocaine base is a different drug from cocaine. *United States v.*

*Thomas*, 932 F.2d 1085, 1090 (5th Cir. 1991). Cocaine base or crack cocaine is prepared for inhalation and magnifies the effect of cocaine, so that one gram of cocaine can profitably be sold in small but potent quantities. *Id.* When the federal disparity between crack cocaine and powder cocaine stood at 100:1, the Third Circuit found:

> There are reasonable grounds for imposing a greater punishment for offenses involving a particular weight of cocaine base than for comparable offenses involving the same weight of cocaine. These grounds include differences in the purity of the drugs, the dose size, the method of use, the effect on the user, and the collateral social effects of the traffic in the drug.

*United States v. Frazier*, 981 F.2d 92, 95-96 (3d Cir. 1992).

Daniels cites studies that pass doubt on the extent of the difference between crack cocaine and powder cocaine. Based in part on such studies, Congress enacted the fair sentencing act of 2010, which reduced the disparity necessary to trigger mandatory minimum sentences for crack cocaine as opposed to powdered cocaine from 100:1 to 18:1. The disparity created by Iowa Code sections 124.401(1)(a)(2) and 124.401(1)(a)(3) is 10:1, far below the federal disparity rate. The rational basis standard is applicable.

Under the rational basis standard, a statute is not considered to have violated the constitution unless there is proof it is patently arbitrary and does not reflect a rational relationship to a legitimate government interest. *See State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002). The legislature has broad discretion in defining and classifying criminal offenses, including drug offenses. *Id.* A classification does not deny equal protection simply because in practice it results in some inequality; practical problems in government permit rough

accommodation. *State v. Mann*, 602 N.W.2d 785, 792 (Iowa 1999). We conclude that Iowa Code section 124.401(1)(a)(3) does not violate the Equal Protection Clause of either the Iowa and Federal Constitution and the legislature was well within its discretionary rights to impose the penalties attached to the specific criminal violations.

We affirm Daniels's conviction and the sentence imposed.

**AFFIRMED.**