# IN THE COURT OF APPEALS OF IOWA

No. 16-0950
Filed July 19, 2017

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**SHAWN ERIC PATTISON,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Palo Alto County, David A. Lester, Judge.

An habitual drug offender challenges his fifteen-year sentence as unconstitutional. **AFFIRMED.**

Jack Bjornstad of Jack Bjornstad Law Office, Okoboji, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik and Zachary C. Miller, Assistant Attorneys General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

The constitutionality of Shawn Pattison's prison sentence depends upon which of two scenarios accurately describes his situation. Pattison paints himself as a drug user, not a drug dealer, who received an indeterminate fifteen-year prison sentence without eligibility for parole for three years for possessing a single rock of methamphetamine. He contends his sentence violates the due process and cruel and unusual punishment clauses of the state constitution. The State poses a different question: Does it offend the Iowa Constitution to punish a three-time felony offender for possessing a small amount of methamphetamine? Adopting the State's comprehensive formulation of the issue, we find no constitutional violation and affirm Pattison's sentence.

## I. Facts and Prior Proceedings

Pattison received his first adult criminal conviction in 1999, according to the presentence investigation report prepared for this case. Relevant to the sentencing issue on appeal, in 2002, Pattison was convicted of eluding, a class "D" felony. In 2004, Pattison was convicted of methamphetamine possession, second offense. In 2007, Pattison was convicted of possession of marijuana, third offense. In 2009, Pattison was convicted of burglary in the third degree, also a class "D" felony.

In September 2015, a deputy with the Palo Alto Sheriff's Office went to Pattison's home to execute an arrest warrant. When the deputy stopped Pattison outside his residence, "[h]e kept putting his hands in his pockets." When searching Pattison's pocket incident to the arrest, the deputy found a baggie containing a rock of methamphetamine, which weighed .41 grams. The State

charged Pattison with possession of a controlled substance, third or subsequent offense, a class "D" felony, in violation of Iowa Code section 124.401(5) (2015). The State also alleged Pattison was an habitual felon in violation of Iowa Code section 902.9. A jury convicted Pattison on the possession charge, and he admitted having the prior felony convictions. The district court sentenced Pattison to an indeterminate fifteen-year term of incarceration under Iowa Code section 902.9(1)(c), with a "mandatory minimum term" of three years under section 902.8.

On appeal, Pattison challenges only the constitutionality of his sentence.[1]

## II. Preservation of Error and Standard of Review

Pattison may contest the legality of his sentence at any time. *See State v. Bruegger*, 773 N.W.2d 862, 869 (Iowa 2009) (recognizing certain constitutional challenges fall under Iowa Rule of Criminal Procedure 2.24(5)(a)). We review constitutional questions de novo. *See id.* As courts, we give a strong presumption of constitutionality to legislative determinations concerning terms of imprisonment. *See State v. Lara*, 580 N.W.2d 783, 785 (Iowa 1998). "We will not declare a statute constitutionally bad unless it is clearly, palpably, and without doubt violative of a constitutional right." *State v. Kramer*, 235 N.W.2d 114, 117 (Iowa 1975).

---

[1] Pattison asked our supreme court to retain this appeal under Iowa Rule of Appellate Procedure 6.1101(2), alleging it presents an issue of first impression. But the supreme court transferred the case to us for resolution.

### III. Constitutional Challenges

#### A. Due Process of Law

Pattison first contends his prison sentence violates the substantive due process protection in the Iowa Constitution. At issue is the following clause: "[N]o person shall be deprived of life, liberty, or property, without due process of law." Iowa Const. art. I, § 9.

Pattison acknowledges the substantial deference the judicial branch affords the legislative branch when it comes to prescribing punishments. *See, e.g., Bruegger*, 773 N.W.2d at 872-73. But he asserts the habitual offender statute at section 902.9(1)(c), requiring incarceration, violates due process when applied to a drug user like he claims to be who should be "treated leniently with emphasis on treatment."

In evaluating Pattison's due process challenge, the parties agree we look for a "reasonable fit" between the government interest and the means used to advance that interest. *See State v. Kingery*, 774 N.W.2d 309, 315 (Iowa 2009). The government interest at stake is deterring and punishing crimes committed by incorrigible offenders. *See State v. Maxwell*, 743 N.W.2d 185, 191 (Iowa 2008). The means used to achieve that interest is a longer sentence and a defined period of incarceration before eligibility for parole. *See State v. Oliver*, 812 N.W.2d 636, 646 (Iowa 2012) (recognizing recidivism as a legitimate basis for increased punishment).

Where previous, more lenient punishments—including probationary periods—have not convinced repeat felons to stay out of trouble, the legislature may logically believe a more extended separation from the community would

make a greater impression on the offenders while, at the same time, would protect the public for a longer stretch of time. While Pattison's drug offenses appear to involve personal possession rather than dealing, it is the persistent nature of his lawbreaking that has subjected him to the habitual offender statute. We cannot say the enhanced punishment adopted by the legislature for this kind of case "is clearly and palpably unreasonable and bears no rational relationship to the legislative purpose of regulating certain repeated criminal conduct." *Kramer*, 235 N.W.2d at 117.

### B. Cruel and Unusual Punishment

Pattison also argues his sentence runs afoul of article I, section 17 of the Iowa Constitution, which provides: "Excessive bail shall not be required; excessive fines shall not be imposed, and cruel and unusual punishment shall not be inflicted."

Cruel-and-unusual-punishment challenges can be raised in two ways: through a categorical approach—questioning the general sentencing practice—or by a gross-disproportionality comparison of a particular defendant's sentence with the seriousness of the crime at hand. *See Oliver*, 812 N.W.2d at 640. Pattison presents arguments under both theories.

Under the categorical approach, the challenge to a particular sentence may be concerned with "either the characteristics of the crime or the criminal." *Id.* at 641. The analysis proceeds in two steps: first, we consider "objective indicia of society's standards" to decide if a national consensus exists as to the sentencing practice; and second, we exercise our independent judgment to consider the culpability of the offenders in light of their characteristics, their

crimes, and the severity of the punishment in question. *See State v. Lyle*, 854 N.W.2d 378, 386 (Iowa 2014).

Here, Pattison focuses on the characteristics of drug users. He contends Iowa legislative enactments show objective indicia of the societal standard that drug users should receive lighter sentences as part of a "lenient rehabilitation-oriented approach." *See* Iowa Code ch. 124. In his view, the Iowa legislature intended probation and treatment for drug users, as distinguished from drug dealers. Pattison urges us to use our "independent judgment," to hold "a fifteen-year sentence for possession of a rock of methamphetamine violates article I, section 17."

Pattison's argument minimizes the "habitual" aspect of the habitual offender statutes.[2] As the State argues,

> Under Iowa Code section 124.401(5), a person who violates chapter 124 and has two prior drug convictions is guilty of a class "D" felony. And under Iowa Code section 902.9(1)(c), a person who has previously been convicted of two felonies is punishable by a fifteen-year sentence. Thus, to receive a fifteen-year sentence for possessing methamphetamine, a person must have at least two prior drug convictions and two prior felony convictions.

That level of recidivism creates greater culpability and merits a more severe sentence. When reviewing a statute increasing punishments for recidivist sex offenders, our supreme court reasoned: "Enhancing punishment based on recidivism fulfills the legitimate goals of incapacitation and deterrence." *Oliver*,

---

[2] As the State points out, Pattison does not claim a national consensus exists against enhanced sentences for recidivists. In fact, the national consensus appears to favor punishing repeat offenders more severely than first-time offenders, as demonstrated by recidivist statutes being enacted in all states and at the federal level. *See, e.g.*, *Parke v. Raley*, 506 U.S. 20, 26 (1992) ("Statutes that punish recidivists more severely than first offenders have a long tradition in this country that dates back to colonial time.").

812 N.W.2d at 646 (holding statute did not constitute cruel and unusual punishment under a categorical analysis). Those two goals—incapacitation and deterrence—are also advanced by the recidivist statutes enhancing Pattison's punishment. *See Dudley v. State*, No. 13-1754, 2014 WL 7343432, at *7 (Iowa Ct. App. Dec. 24, 2014). Because Pattison's sentence serves legitimate goals and is supported by a national consensus, we reject his claim that the punishment is categorically cruel and unusual.

Implicating the gross-disproportionality analysis, Pattison asserts: "It is certainly cruel to sentence [him] to fifteen years for possession of a rock of methamphetamine." Our supreme court has determined "review of criminal sentences for 'gross disproportionality' under the Iowa Constitution should not be a 'toothless' review" and adopted "a more stringent review than would be available under the Federal Constitution." *Bruegger*, 773 N.W.2d at 883. In performing that "more stringent review," we use the three-part test adopted in *Solem v. Helm*, 463 U.S. 277, 292 (1983), and modified in *Ewing v. California*, 538 U.S. 11, 23-24 (2003). *See Bruegger*, 773 N.W.2d at 873.

The first part of the test involves balancing the gravity of the crime against the severity of the sentence. *Id.* It is "a relatively rare case" where this threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality. *Id.* at 873, 884. And we perform the balancing with "substantial deference" to the legislatively determined penalties. *Id.* at 872-73. Further, we may consider Pattison's criminal history because recidivist offenders are "more culpable and thus more deserving of a longer sentence" than first-time offenders. *Oliver*, 812 N.W.2d at 650. Finally, we mull

whether "an unusual combination of features" in Pattison's case converge, generating "a high risk of potential gross disproportionality." *Bruegger*, 773 N.W.2d at 884.

Unlike *Bruegger*, Pattison's sentence is not the rare case where unusual circumstances unite to create a high risk of gross disproportionality. Pattison, who was forty-five years old at the time of sentencing, has a long history of criminality, including multiple drug convictions. His possession of .41 grams of methamphetamine in September 2015 cannot be viewed in isolation from his extensive adult criminal record—starting in 1999.

Critical to our constitutional analysis is the preeminent role of the legislature in fashioning criminal sentences. We must defer to the legislature's determination to punish a recidivist drug crime as a "D" felony when the defendant has previously been convicted of two or more violations of our controlled-substances chapter. We also must defer to the legislature's determination that a conviction for multiple felonies warrants the habitual offender enhancement. *See Dudley*, 2014 WL 7343432, at *8. In this light, we conclude the severity of Pattison's sentence is not grossly disproportionate to the gravity of his methamphetamine possession—viewed as the latest example of his recidivism.

Because Pattison has failed to meet the threshold test, we may abort our assessment of his gross-proportionality claim. *See Oliver*, 812 N.W.2d at 653 ("Since the penalty does not lead to an inference of gross disproportionality, we need not proceed to steps two and three of the analysis.").

To recap, sentencing a repeat drug offender and habitual felon to fifteen years in prison with a mandatory three-year minimum does not violate either the due process clause or the cruel and unusual punishment clause of the Iowa Constitution. Accordingly, we reject Pattison's illegal-sentence challenge.

**AFFIRMED.**